UNITED STATES of America, Plaintiff,

v.

**Russell PETERSEN, Defendant.**

**No. 4:97CR3013.**

United States District Court, D. Nebraska.

Sept. 2, 1998.

---

4. The Court took notice of that approval in *United States of America v. Donald G. Borchelt,* Cause No. 1:91CR31 (SNL) by Order granting the Plaintiff additional time in which to file his motion for summary judgment. [15]

5. Plaintiff and Defendant agree that the Social Security Administration withheld fourteen (14) checks after Plaintiff's release from prison and has collected the overpayment it made to Plaintiff while he was incarcerated. (Tr. 33).

Steven A. Russell, Assistant United States Attorney, Lincoln, NE, for plaintiff.

John C. Vanderslice, Federal Public Defender's Office, Lincoln, NE, for defendant.

## MEMORANDUM AND ORDER

KOPF, District Judge.

This matter comes on for consideration of the defendant's motion for downward departure (filing 28). Russell Petersen (Petersen) pled guilty to receiving, via a computer, visual depictions of minors engaging in sexually explicit conduct which depictions had been transported in intrastate commerce in violation of 18 U.S.C. § 2252(a)(2).

Petersen, through his very able counsel, endeavors to place himself within the rationale of my departure in *United States v. Shasky*, 939 F.Supp. 695 (D.Neb.1996) (downward departure would be granted when sentencing defendant for receiving child pornography via computer since the case was outside the "heartland"; the defendant was unusually susceptible to abuse in prison and the defendant engaged in extraordinary post-offense efforts at rehabilitation; the defendant was a homosexual state trooper of diminutive stature and weight who was charged in a child pornography case that was the subject of a news release by the government; Margretta Dwyer, then director of an internationally regarded sex offender treatment program, testified that defendant's progress in that extensive and expensive program had been extraordinary). I am not, however, persuaded that a departure is appropriate in Petersen's case, although I acknowledge my power to depart in an appropriate case.

## I.

Petersen seeks a departure pursuant to various portions of the Sentencing Guidelines. Initially, he moves for departure under Guideline section 5K2.0. U.S.S.G. § 5K2.0, p.s. (pertaining to cases outside the heartland of similar cases). He also moves for departure under Guideline section 5K2.13. U.S.S.G. § 5K2.13, p.s. (relating to diminished capacity). He further relies upon Guideline section 5H1.3, Guideline section 5H1.5, and Guideline section 5H1.6. U.S.S.G. §§ 5H1.3, p.s. (mental and emotional condition), 5H1.5, p.s. (employment record), and 5H1.6, p.s. (family ties and responsibilities).

According to the presentence report (PSR), Petersen was born on May 8, 1958. He has a high school education and has attended college. He is divorced. He is in good health, is approximately 5′10″ tall, and weighs about 200 pounds.

Petersen is currently employed delivering pizzas and works 40 to 50 hours per week, earning $5.15 per hour and $.65 per mile. From January 1, 1984, until his resignation on October 8, 1997, Petersen was a civilian employee of the Nebraska Air National Guard. He was also an enlisted military member of the Air National Guard. He resigned his positions with the Air National Guard as a result of these charges.

The F.B.I. first became interested in Petersen when his former wife, Diane Petersen, informed authorities that she had observed her husband saving materials downloaded from his computer that contained numerous depictions of children engaged in sexually explicit activity. At least 20 pictures specified in the count of conviction involved minors engaging in sexually explicit conduct. A number of these photographs also contained pictures of prepubescent minors. The United States confiscated 23 diskettes and 15 of those diskettes contained pornographic materials.

Petersen has two children. One of the children has cystic fibrosis. The child with cystic fibrosis has incurred large medical expenses and much of that expense has been covered by medical insurance that Petersen carries. A large portion of his present income is obligated to the continuance of insurance coverage, as mandated in the divorce decree, together with child support payments. Petersen has a negative net worth.

Petersen has been the subject of various psychiatric and psychological investigations. As a part of the divorce, Petersen was evaluated on July 3, 1996, by Y. Scott Moore, M.D. Dr. Moore did not find that Petersen was suffering from any mental illness and Dr. Moore did not find that Petersen was a pedophile. However, Dr. Moore thought that Petersen "may be involved in some [p]edophiliac activities." (PSR ¶ 47.)

A psychological evaluation by Joseph L. Rizzo, Ph.D., clinical psychologist, was also conducted as part of the divorce proceedings. Dr. Rizzo described Petersen as a person who was "not telling the truth and not stating what is truly on his mind and what he is experiencing." (PSR ¶ 51.)

Pursuant to an order of this court, Petersen was examined by Christine Scronce, Ph. D., Director of Forensics, at the Federal Medical Center, Rochester, Minnesota. Dr. Scronce found that Petersen was not suffering from a major mental illness; that he was

properly diagnosed with pedophilia (sexually attracted to males/nonexclusive type); and that Petersen was not impaired within the meaning of U.S.S.G. § 5K2.13. (Ex. 1 (Deposition of Dr. Christine Scronce); Ex. 102 (Psychological Evaluation).) Doctor Scronce did not think that Petersen was a good candidate for treatment.

Margretta Dwyer was engaged by counsel to serve as a consultant for the defendant. Ms. Dwyer is a nationally regarded sex therapist. She testified persuasively in the *Shasky* case that Mr. Shasky had engaged in extraordinary efforts at rehabilitation.

Although she did not develop a therapeutic relationship with Petersen and Petersen did not participate in the well-regarded program that Dwyer previously directed, she tested him. Essentially, Dwyer believed that Petersen was having difficulty dealing with his homosexuality and used the computer as an outlet. (Ex. 202 (Assessment of Russell Petersen); Ex. 214 (Deposition of Margretta Dwyer).)

Dwyer found that Petersen suffered from depression with a possible borderline personality disorder. Dwyer did not think that Petersen was a pedophile. While Dwyer thought that Petersen "could benefit from treatment," she also candidly acknowledged that the Minnesota Multiphasic Personality Inventory–2, an objective test, "did not see him as a good candidate for treatment." (Ex. 202 at 4 .)

Petersen has been seeking therapy from a licensed clinical psychologist, Kenneth Liggett, Ph.D. Dr. Liggett acknowledged that he does not consider himself to be an expert sex therapist. Dr. Liggett stated that he was following a program for the treatment of Petersen that had been laid out by Margretta Dwyer. As of June 1, 1998, Dr. Liggett had seen Petersen 37 times.

Dr. Liggett agreed with Dwyer that Petersen was suffering from confusion regarding his sexual identity. Dr. Liggett also did not believe that Petersen was a pedophile. Dr. Liggett is "cautiously optimistic about what therapy can do for Mr. Peters[e]n" (Ex. 215, Tr. 90 (Deposition of Kenneth Liggett)), but he also acknowledges that "Mr. Peters[e]n

does not have a great deal of insight." (*Id.*; Tr. 52.)

Petersen's total offense level is 14 and his criminal history category is I. The Guideline Imprisonment Range for Petersen is 15 to 21 months. The supervised release range is 2 to 3 years. The Guidelines do not authorize probation. The fine range is $4,000 to $40,-000.

## II.

I have applied the methodology required by the Supreme Court in *Koon v. United States,* 518 U.S. 81, 95–96, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996) (setting forth the four factors that must be considered by the sentencing court when considering a departure motion). The factors relied upon by Petersen do not support departure, whether they are considered separately or collectively. In brief, the following explains my findings and conclusions that a departure is not justified.

■ First, under Guideline section 5K2.0, there is nothing about this case to take it outside the heartland. Certainly, Petersen has not demonstrated extraordinary rehabilitation, as Mr. Shasky had done. For example, a fair reading of all of the experts' testimony is that Petersen's prognosis is, at best, only fair.

Unlike Shasky, a small state trooper who was a homosexual charged with a crime that the United States Attorney's Office publicized, Petersen, standing nearly 6 feet tall and weighing nearly 200 pounds, is not unusually susceptible to abuse in prison. *See also United States v. Kapitzke,* 130 F.3d 820, 822–23 (8th Cir.1997) (defendant's mere membership in a class of offenders that might be targeted by other inmates did not make his case extraordinary and, thus, did not support departure from sentencing guidelines in child pornography case).

■ Second, there is no evidence to suggest that when Petersen committed the child pornography offense, he was "suffering from *significantly* reduced mental capacity" within the meaning of U.S.S.G. § 5K2.13 (emphasis added). Indeed, Petersen vigorously argues that he is not a pedophile. His therapist, Kenneth Liggett, sees Petersen as suffering

from nothing more than an identity crisis regarding his sexuality. Moreover, even if Petersen had some reduced mental capacity, there is no showing that it "contributed to the commission of the offense" in a meaningful way, as required by section 5K2.13.[1]

 Third, there is nothing about Petersen's mental or emotional condition, his employment record, or his family ties that take this case out of the heartland of cases. As Guideline sections 5H1.3, 5H1.5, and 5H1.6 explicitly provide, mental and emotional problems, employment records, and family ties "are not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range."

Petersen states that one of his children has cystic fibrosis, and that this child needs the treatment paid for by his insurance policy. Petersen argues that if he goes to jail, the child will be without insurance and the needed medical treatment. The difficulty with such an assertion is that there is no evidence to support it.

 While it is true that Petersen's child has cystic fibrosis and that he provides insurance for the child, there is no proof that Petersen's wife, who is the custodial parent, would be unwilling or unable to provide that insurance in some alternative fashion. Indeed, it was Petersen's wife who reported his illegal conduct to authorities.[2] Simply put, Petersen "has not shown his family's circumstances are substantially different from those facing families of any other defendant about to be incarcerated." *Kapitzke*, 130 F.3d at 822 (financial burden that defendant's imprisonment would place on his wife, who would be left to support their two children alone as best she could, was not substantially different from burden faced by families of other defendants and thus did not support departure from sentencing guidelines on child pornography count, even if there was a potential for divorce).

 Petersen also suggests that because he was employed by the Air National Guard,

he could not reveal his sexual identity. Consequently, he suggests that he turned to computer pornography. Petersen's suggestion that he was somehow driven to commit the instant offense because of his association with the Air National Guard is not supported by the evidence. For example, the evidence reveals that Petersen "had a three-year relationship with a man while both were in the military." (Ex. 102, at 8.)

In summary, nothing about this case justifies a departure. Furthermore, I take this opportunity to stress that the *Shasky* case should not be read to apply to factual situations which are not strictly analogous. Accordingly,

IT IS ORDERED that Petersen's motion for downward departure (filing 28) is denied.

1. I recognize that Petersen is not required to prove "but for" causation.

2. Although I have not considered the letter as evidence, Petersen's wife has written the probation officer requesting that the court impose the maximum sentence allowable.