UNITED STATES of America,
Plaintiff–Appellee,

v.

Daniel Zane MOHRBACHER,
Defendant–Appellant.

No. 98–10009.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 8, 1999.

Decided June 29, 1999.

Michael Bradley Bigelow, Sacramento, CA, for the defendant-appellant.

Miguel Rodriguez, Assistant United States Attorney, Sacramento, CA, for the plaintiff-appellee.

Before: KRAVITCH,* REINHARDT, and T.G. NELSON, Circuit Judges.

Opinion by Judge REINHARDT; Concurrence by Judge T.G. NELSON.

REINHARDT, Circuit Judge:

Daniel Zane Mohrbacher appeals two counts of conviction under 18 U.S.C. § 2252(a)(1) for transporting visual depictions of minors engaged in sexually explicit conduct. He does not challenge his other two counts of conviction, one for receiving visual depictions of minors engaging in sexually explicit conduct under 18 U.S.C. § 2252(a)(2) and the other for possession of three or more items containing such depictions under § 2252(a)(4)(b). Mohrbacher's illegal conduct consisted of downloading images of child pornography from a foreign-based electronic bulletin board. As to the challenged counts, he argues that he was charged and convicted under the wrong section of the statute because while he may have *received* these images in violation of § 2252(a)(2) he did not *transport* or *ship* them in violation of § 2252(a)(1). We agree with his reading of the statute, and accordingly reverse these two counts of conviction. However, we reject Mohrbacher's second contention on appeal, and hold that the district court did not clearly err by denying him credit for acceptance of responsibility.

---

* The Honorable Phyllis A. Kravitch, Senior Circuit Judge of the United States Court of Appeals for the Eleventh Circuit, sitting by designation.

# I.

## BACKGROUND

In March 1992, Danish police seized the business records of BAMSE, a computer bulletin board system based in Denmark that sold child pornography over the Internet. The records included information that Mohrbacher, who lived in Paradise, California, had downloaded two graphic interface format (GIF) images from BAMSE in January 1992.

In March 1993, police executed a search warrant at Mohrbacher's workplace and found, among other images, two files that had been downloaded from BAMSE, one of a nude girl and one of a girl engaged in a sex act with an adult; both girls were under twelve. During the execution of the warrant, Mohrbacher was cooperative, confessing that he had downloaded the two images from BAMSE, showing police where they could find the images that they were looking for on his computer, and providing telephone records that confirmed the dates of his Internet activity. Mohrbacher subsequently cooperated with the government's investigation of child pornography. He made monitored telephone calls to a number of electronic bulletin boards, provided the name of one bulletin board operator, and testified at a grand jury hearing. At that hearing, Mohrbacher again admitted that he had downloaded at least one of the two images.

In May 1996, Mohrbacher was indicted for one count of transporting visual depictions of minors engaged in sexually explicit conduct in violation of 18 U.S.C. § 2252(a)(1) and one count of possession of three or more items depicting sexually explicit conduct in violation of 18 U.S.C. § 2252(a)(4)(B). Pursuant to a plea agreement, Mohrbacher entered a guilty plea to count two in February 1997. In September 1997, however, with the consent of the government and the district court, this guilty plea was withdrawn because the factual basis that had been established no longer constituted a crime under 18 U.S.C. § 2252(a)(4)(B). *See United States v. Lacy,* 119 F.3d 742, 747 (9th Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 1571, 140 L.Ed.2d 804 (1998) (holding that knowledge of the nature of the material is an element of the offense of possessing child pornography). At the hearing on Mohrbacher's motion to withdraw his plea, the prosecutor appeared ambivalent about pursuing another plea bargain. He first commented that "there would be no plea offer on the table from the United States," but when the judge pointed out that further negotiations were not precluded he expressed his agreement with that observation. Through his attorney and his own statements to the judge, Mohrbacher communicated his frustration with the pace of the proceedings and with the impact that the case was having on his family,[1] and announced that he was unwilling to continue waiving time and planned to insist on his right to a speedy trial. He also claimed that he had not known the nature of the child pornography at the time that he downloaded it.

The grand jury then reindicted Mohrbacher under a superseding indictment for two counts of transporting visual depictions of minors engaging in sexually explicit conduct in violation of 18 U.S.C. § 2252(a)(1), one count of receipt of visual depictions of minors engaging in sexually explicit conduct in violation of 18 U.S.C. § 2252(a)(2), and one count of possession of three or more items depicting sexually explicit conduct in violation of 18 U.S.C. § 2252(a)(4)(B). The government represents that on a number of subsequent occasions it approached Mohrbacher in order

---

1. Mohrbacher's wife had recently died, and Mohrbacher told the court that he felt that his involvement in this criminal case had caused her death from a botched intubation procedure. Mohrbacher, a paramedic, would have been able to perform the procedure had he not been away from home, at a court appearance. Furthermore, during the week before the change of plea hearing, Mohrbacher's daughter had attempted suicide.

to negotiate a plea agreement.[2] No plea agreement was reached, and the case proceeded to trial.

Mohrbacher's trial began on September 30, 1997. On October 3, he made a Rule 29 motion for acquittal on the transporting counts, arguing that downloading images constituted *receiving*, rather than transporting or shipping, within the common sense meaning of the statute. The district court denied the motion, reasoning that downloading from a computer bulletin board was analogous to "the seller putting [an item] on his shelf and the buyer being the person who takes it off the shelf. Here, it was Mr. Mohrbacher who pushed the right buttons that caused the images to be sent from Denmark to California." The court also stated that Mohrbacher could be criminally liable for causing the images to be transported under 18 U.S.C. § 2,[3] commenting that "[i]t was Mr. Mohrbacher who caused the images or visual depiction to be transported in foreign commerce."

At the trial, in addition to the witnesses who linked Mohrbacher directly to the images that were the subject of the criminal charges, the prosecution presented expert testimony about the operation of the bulletin board. The expert witness testified that "[a] computer bulletin board system is kind of like a store of sorts. There's the capability of sending and receiving files and sending and receiving messages." Having studied BAMSE for two years, he provided the following description of it:

> BAMSE was a computerized bulletin board system. The bulletin board system is an automated system that runs 24 hours a day, seven days a week. That's a computer system that allows people to connect to it via computer and telephone modem. Once users connect to the BBS, they log in as a user name, they provide a password, and the BBS has a list of images available for download. Individuals would select pictures, then download them to their computer.... The image files on the BAMSE BBS were GIF files, which stands for graphic interchange files. It's just a binary string of information. It's the computer's way of representing a visual image.

The expert described the process of downloading GIF image files, explaining that the bulletin board user selects an image and uses his own computer modem to download the image file through telephone lines. Once downloading has been completed, the image is contained in the user's own computer system. No human conduct is required at the bulletin board site in order to facilitate this file transfer. When asked whether a "store" analogy was appropriate, the expert agreed but then described one difference: when a customer purchases an item on the bulletin board, the supply is not depleted—rather, a copy of the original product is generated and sent. On cross-examination, he agreed that defense counsel's analogy to a mail order catalogue was fair, and the following exchange ensued in which Mohrbacher's attorney attempted to demonstrate how downloading would compare to calling in a mail order:

> Q. I would call them on their catalog order number.
>
> A. Okay.
>
> Q. And I would either be connected with a human being or with, in your world—
>
> A. Computer.
>
> Q. some computer. So the computer's just a substitute for the human being who initially we used to contact; isn't that right?
>
> A. Sure.

---

**2.** In support of its contention, the government has presented two letters that were sent to Mohrbacher which set forth its understanding that he was not interested in negotiating and offered to engage in further discussions in the event that it was mistaken about his position.

**3.** 18 U.S.C. § 2(b) provides: "whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal."

Q. Just a way of doing business. Instead of the human being responding, the computer responds?

A. Sure. A lot of the sites have that with the Internet access right now.

Q. Sure. So what we're doing as the businessman that runs Penney's, I've substituted my computer system, which guys like you developed, for the human being I used to have to pay too much money?

A. Okay.

Q. Now the BBS is the same program; is it not?

Q. Same idea we're going with, yeah.

. . . .

A. A systems operator is like a store-keeper or shopkeeper. He buys computer hardware, he buys BBS software, and he has his goods that he wants to sell. And he has to customize the BBS software to reflect what merchandise he wants to sell. He needs to create his catalog, if you will.

Q. Sure. So if he didn't have all this computer stuff, what he'd have is a room with a bunch of—like a wall with little compartments in it?

A. Sure.

Q. And you'd call him up, and he'd walk over, and he'd pull it out of the compartment, and he'd send it to you if you paid him for it?

A. Sure.

Q. So instead of having the sysop [systems operator] do the shipping, you've got the computer doing the shipping?

A. Correct.

During the presentation of the prosecution's case, Mohrbacher's attorney challenged and attempted to impeach some of the witnesses. However, after the government rested, Mohrbacher presented no witnesses, evidence or defense. His attorney's closing argument suggested the possibility that Mohrbacher might not have known the nature of the images that he was downloading or that someone else could have been responsible for downloading and storing the illegal material. The attorney also argued that downloading an image could constitute "receiving" but not "transporting" or "shipping." At the end of the trial, Mohrbacher renewed his Rule 29 motion and the district court again denied it. The jury convicted Mohrbacher on all counts.

Given Mohrbacher's lack of criminal history, the sentencing range for the offense was 37 to 46 months. The government filed a 5K1.1 motion for downward departure based on substantial assistance, and the district court departed even farther than the government had recommended. At the sentencing hearing, Mohrbacher continued to maintain that he had not known the nature of the images that he was downloading and that he therefore could not have pled guilty to the charged offenses while maintaining his honesty. The district court rejected Mohrbacher's argument that he was entitled to a three-level adjustment for acceptance of responsibility and sentenced Mohrbacher to nine months for each count of conviction, sentences to be served concurrently, and three years of supervised release.

Mohrbacher filed a timely notice of appeal and a motion to be released on bail pending appeal. In denying the motion for bail, the district court once again commented on the merits of the Rule 29 motion, stating that by downloading the images, "[w]hat he basically did was reach onto the bulletin board and get his own information. They didn't have to send it to him. They post it in their bulletin board, and he's the one that does all of the conduct on his computer which results in his downloading the information from their bulletin board into his computer."

By the time we heard his appeal, Mohrbacher had finished serving his period of incarceration, but he remains on supervised release.

## II.

### MOTION FOR ACQUITTAL

The facts relevant to Mohrbacher's motion for acquittal are not disputed. We therefore confront directly the legal question whether downloading images from a computer bulletin board constitutes shipping or transporting within the meaning of the terms as used in 18 U.S.C. § 2252(a)(1), a question of first impression. Mohrbacher argues that downloading is properly characterized as receiving images by computer, which is proscribed by § 2252(a)(2), rather than transporting or shipping images by computer as prohibited by § 2252(a)(1). If Mohrbacher is right, then with respect to the two challenged counts he was charged and convicted under the wrong statutory provision, and those convictions must be reversed. *See United States v. Stewart Clinical Laboratory, Inc.*, 652 F.2d 804, 807 (9th Cir.1981) (reversal of convictions required when defendants were charged and convicted under wrong subsection of statute).

Mohrbacher reasons that downloading is essentially an electronic request by one computer owner to another computer owner to deliver files or data electronically to the requesting owner's computer. He presents a definition of downloading in support: "To copy data ... from a main source to a peripheral device .... the process of copying a file from an online service or bulletin board service (BBS) to one's own computer." PHILIP E. MARGOLIS, RANDOM HOUSE PERSONAL COMPUTER DICTIONARY at 156 (2d ed.1996). This definition is in accord with the expert testimony that was presented by the prosecution at trial. As was discussed in greater detail earlier in this opinion, that expert testified that downloading is analogous to placing an order through a mail order catalogue except that a computer fills the order automatically and the inventory is not depleted because a new copy of the image is generated.[4]

The question that we must resolve is whether, given what appears to be a noncontroversial definition of the term, Mohrbacher's "downloading" of two images constitutes a violation of § 2252(a)(1). Mohrbacher suggests an analogy for our consideration, an analogy that is consistent with that testified to by the government expert. Mohrbacher argues that his conduct was comparable to that of a customer who places a phone order requesting delivery of an item, the only difference being that the entity that was filling the order— the bulletin board—had a completely automated response and did not require any action by an individual at the time the order was filled. The government argues that the automated nature of the bulletin board's response makes *Mohrbacher* the one responsible for causing the visual images to move from one location to another and that an individual who causes transporting or shipping is guilty as a principal. At oral argument, when asked to clarify whether a computer bulletin board service operator could be liable for transporting or shipping images under its interpretation of the statute, the government answered in the negative. In the government's view, it is only the individual who downloads the image who has caused that image to be transported. Mohrbacher responds by pointing out that a request will not be filled unless the operator of the bulletin

---

4. Other sources describe the act in similar terms. *See* BOB COTTON & RICHARD OLIVER, THE CYBERSPACE LEXICON 66 (1994) ("Originally used to describe the movement of information from a large computer to a smaller one. Now used to describe the process of transferring data from one computer system to another, or from a network or bulletin board to a personal computer, or from a computer to an archiving storage device"); INTERNATIONAL BUSINESS MACHINES CORP., IBM DICTIONARY OF COMPUTING 217 (1994) ("To transfer programs or data from a computer to a connected device, typically a personal computer ... To transfer data from a computer to a connected device, such as a workstation or microcomputer."); DAVID MORSE, CYBER DICTIONARY (1996) ("To copy a file from a host system (such as America Online or CompuServe) onto your computer, via telephone lines and a modem.").

board has configured it to accept orders. Thus, he argues, it is the bulletin board operator who has transported or shipped the images, and the downloader has only received them. The disagreement is in essence over whether the government is correct that the automated nature of the process requires the conclusion that downloading is equivalent to transporting.

■■■■ "In interpreting a statute, we look first to the plain language of the statute, construing the provisions of the entire law, including its object and policy, to ascertain the intent of Congress." *Northwest Forest Resource Council v. Glickman,* 82 F.3d 825, 830 (9th Cir.1996) (internal quotation marks and citation omitted). The statute at issue does not define the terms "transport," "ship" or "receive." *See* 18 U.S.C. § 2256 (1999). "Where a statutory term is not defined in the statute, it is appropriate to accord the term its 'ordinary meaning.'" *Northwest Forest Resource Council,* 82 F.3d at 833 (internal quotation marks and citation omitted). When there is no indication that Congress intended a specific legal meaning for the term, the court may look to sources such as dictionaries for a definition. *See Muscarello v. United States,* 524 U.S. 125, 118 S.Ct. 1911, 1914–16, 141 L.Ed.2d 111 (1998) (relying upon dictionaries, literature, and newspaper reports, in addition to legislative history, to ascertain the meaning of the word "carry").

The first definition of "receive" in the Oxford English Dictionary is "[t]o take into one's hand, or into one's possession (something held out or offered by another); to take delivery of (a thing) from another, either for oneself or for a third party." OXFORD'S ENGLISH DICTIO- NARY 2D 314 (1989).[5] An individual who downloads material takes possession or accepts delivery of the visual image; he has therefore certainly received it. In fact, guides to computer terminology often analogize downloading to receiving information and uploading to transmitting or sending. "To transmit a file from one computer to another. When conducting the session, download means receive, upload means transmit." ALAN FREEDMAN, COMPUTER WORDS YOU GOTTA KNOW! ESSENTIAL DEFINITIONS FOR SURVIVAL IN A HIGH–TECH WORLD 49 (1993). "To download means to receive information, typically a file, from another computer to yours via your modem.... The opposite term is upload, which means to send a file to another computer." ROBIN WILLIAMS, JARGON, AN INFORMAL DICTIONARY OF COMPUTER TERMS 170–71 (1993). Even the prosecution's expert, when asked what happens when an individual downloads an image, responded, "When you download the pictures, you receive an exact copy of the picture that existed in Denmark." *See also* Peter Wayner, *Plugging In to the Internet: Many Paths, Many Speeds,* N.Y. TIMES (Jan. 30, 1999) ("You might be able to download, or receive, large volumes of data quickly, but the time to upload, or send, information could be much slower.").

However, it is also possible, employing dictionary definitions, to construe the terms "transport" and "ship" in a manner that encompasses a downloader's acts. "Transport" is defined as "to carry, convey, or remove from one place or person to another; to convey across." OXFORD'S ENGLISH DICTIONARY 2D, *supra,* at 423.[6] Shipping is usually defined as one

---

**5.** *See also* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY UNABRIDGED 1894 (1986) ("To take back, take, accept, receive ... to take possession or delivery of ... to knowingly accept ... to take in: act as a receptacle or container for ... to come into possession of: acquire"); BLACK'S LAW DICTIONARY 1268 (6th ed.1990) ("To take into possession and control; accept custody of; collect.").

**6.** *See also* WEBSTER'S THIRD, *supra,* AT 2430 ("To transfer or convey from one person or place to another: carry, move"); BLACK'S LAW DICTIONARY, *supra,* at 1499 ("To carry or convey from one place to another.").

manner of transporting. *See* WEBSTER'S THIRD, *supra*, at 2096 ("to cause to be transported" or "to move (something) from one place or position to another").[7] An individual who downloads an image to his own computer has indisputably received that image; however, he has also arguably moved that image from one place to another—from the bulletin board to his own computer.[8] Of course, the downloader is only able to accomplish this task because another person has preconfigured the bulletin board to accept his order.[9] Given the role that another individual plays in uploading the images and configuring the bulletin board to send them upon request, and the fact that the process of downloading would seem to correspond much more closely with the term "receiving" than with "transporting" or "shipping," the dictionary definitions are not dispositive of the issue before us.

■ We next look to other principles of statutory interpretation. In determining the meaning of a statutory provision, a court may consider the purpose of the statute "in its entirety," *see Alarcon v. Keller Industries, Inc.*, 27 F.3d 386, 389 (9th Cir.1994), and whether the proposed interpretation would frustrate or advance that purpose. *See Tierney v. Kupers*, 128 F.3d 1310, 1311–12 (9th Cir.1997). In this case, the statutory purpose provides no guidance as to which of its sections addresses the act of downloading child pornography. In *United States v. Black*, 116 F.3d 198 (7th Cir.), *cert. denied*, — U.S. —, 118 S.Ct. 341, 139 L.Ed.2d 264 (1997), the Seventh Circuit described the statute's purpose, as follows: "broad legislative enactment was necessary to prevent child abuse." 116 F.3d at 202. The statutory provisions therefore must be interpreted in accord with the statute's broad and general purpose of facilitating the prosecution of individuals who are involved with child pornography.[10] However, the decision whether downloading is properly charged under (a)(1) or (a)(2) of the statute, or both, will neither hinder nor facilitate such prosecutions. Because the penalties and sentencing guidelines ranges for both provisions are identical, this court's decision will determine how downloading should be prosecuted but not affect the difficulty or nature of such prosecutions. Whichever statutory provisions may be deemed applicable, the statutory purpose will be equally served.

7. *See also* OXFORD ENGLISH DICTIONARY 2D, *supra*, at 276 ("To send or transport by ship.... to export ... to transport (goods) by fail or other means of conveyance"); BLACK's LAW DICTIONARY, *supra*, at 1377 ("to transport; to deliver to a carrier (public or private) for transportation. To send away, to get rid of. To send by established mode of transportation, as to 'carry,' 'convey,' or 'transport,' which are synonymous and defined, respectively, as 'to bear or cause to be borne as from one place to another,' and 'to carry or convey from one place to another.' ").

8. The statute does not appear to require that the defendant ship or transport the image to a third person. *See United States v. Kemmish*, 120 F.3d 937, 938 (9th Cir.1997), *cert. denied*, — U.S. —, 118 S.Ct. 1087, 140 L.Ed.2d 144 (1998) (affirming defendant's conviction under § 2252(a)(1) after arrest for attempt to smuggle child pornography videotapes into United States).

9. The action of the bulletin board operator, on the other hand, cannot be properly characterized as receiving images but *only* as transporting or shipping—unless the operator's conduct does not violate *any* provision of the statute, as the government rather oddly suggested at oral argument. While of course more than one individual could be held responsible for transporting a given image, it is more difficult to claim that Mohrbacher himself *caused* the images to be transported when one considers that the bulletin board operator is in reality the individual who is primarily responsible for the images moving from the bulletin board to individuals' computers.

10. An examination of the legislative history of the statute does not provide any additional information. Congressional reports regarding the enactment of § 2252 and subsequent amendments have also defined the statutory purposes broadly and in general terms. *See, e.g.*, S. REP. No. 95–948 *1 (1977); H. REP. No. 98–292 (1983); CONF. REP. No. 104–863 * 70–72 (1996).

For further interpretive guidance, a court may examine the particular statutory language to be construed in relation to the other parts of the statute. *See United States v. DeLaCorte*, 113 F.3d 154, 156 (9th Cir.1997). Here, an examination of the structure of § 2252 tends to support Mohrbacher's position. The fact that Congress chose to separate the provision that makes transporting or shipping unlawful from the subsection that criminalizes receiving or distributing suggests that the provisions are meant to regulate different types of behavior. "[A] statute must be interpreted to give significance to all of its parts.... We have long followed the principle that statutes should not be construed to make surplusage of any provision." *Northwest Forest Resource Council*, 82 F.3d at 833–34 (internal citation, quotation marks, and bracket omitted).

On the basis of our analysis of the nature of the process of downloading, the dictionary definitions of the terms included in the statute, the statute's purpose, and the structure of the statutory provisions, we conclude that Mohrbacher's interpretation of the statute is correct. An individual who downloads images from a computer bulletin board takes an action that is more analogous to ordering materials over the phone and receiving materials through the mail than to sending or shipping such materials. Those who are responsible for *providing* the images to a customer, by making them available on a computer bulletin board or by sending them via electronic mail, are properly charged with and convicted of shipping or transporting images under § 2252(a)(1). A customer who is simply on the receiving end—who downloads an image that has been made available through an automated, preconfigured process or that has been sent by another computer user—is guilty of receiving or possessing such materials under § 2252(a)(2) but not of shipping or transporting them.

We reject the argument that even if downloading itself is more analogous to receiving, Mohrbacher, by ordering the pornographic images, *caused* them to be transported and is therefore nonetheless criminally liable under § 2252(a)(1). Acceptance of this reasoning would allow any act of ordering, requesting, or indicating an interest in contraband to provide a basis for conviction of transporting or shipping such material, and would eliminate the distinction between purchasers and sellers or shippers and receivers. Because a request for drugs could be viewed as *causing* a drug sale to occur, any purchaser or receiver could be charged as a buyer or distributor at the prosecutor's discretion. For the reasons explained above, the distinctions between downloading an image and ordering an item from a human supplier—i.e., the facts that the response is automatic (because an individual has programmed it to be so) and that filling the order does not deplete the supply—provide no logical reason to limit the principle that would be established: any customer who requests or orders a product could be held liable for causing that product to be sent or sold.

The government's reliance upon 18 U.S.C. § 2(b) does not change our analysis. That provision does not eliminate the distinction between buyers and sellers, or between shippers and receivers. It serves a different purpose: it insures that an offender who utilizes an innocent agent to carry out a criminal act but may not be charged as a principal under § 2(a), the aiding and abetting provision, is not insulated from criminal liability. *See United States v. Causey*, 835 F.2d 1289, 1292 (9th Cir.1987) (purpose of § 2(b) is to allow offenders who use innocent agents to perform illegal acts to be punished as principals). While the government relies upon *United States v. Thomas*, 893 F.2d 1066 (9th Cir.1990), and *United States v. Michaels*, 796 F.2d 1112, 1117–18 (9th Cir. 1986), those cases both involve defendants who induced innocent parties to mail contraband on their behalf. They stand for the principle that a defendant may be convicted as a principal even if he uses anoth-

er person as the agent to commit the crime. Such a concept is entirely different from the theory urged by the government in this case, which is essentially that, when a customer orders illegal materials from a producer or supplier, the ordering party has caused the supplying party's illegal act of filling the order. The government's interpretation of 18 U.S.C. § 2(b) would vest unconstrained discretion in prosecutors to decide how to charge a large number of crimes that involve actions by individuals who commit *different* offenses, and might unwittingly render many provisions of criminal statutes superfluous or duplicative.

A review of the published cases involving shipping or transporting child pornography via computer reveals that prosecutions are conducted in the manner that we have concluded is required by the statute: in each case, individuals convicted under § 2252(a)(1) had either sent the material electronically to another computer user or had made the material available to others through an electronic bulletin board or news group. *See United States v. Hibbler*, 159 F.3d 233, 235–36 (6th Cir.1998), *cert. denied*, —— U.S. ——, 119 S.Ct. 1278, 143 L.Ed.2d 372 (1999) (defendant convicted of violating § 2252(a)(1) had traded child pornography); *United States v. Miller*, 146 F.3d 1281, 1283 (11th Cir.1998), *cert. denied*, —— U.S. ——, 119 S.Ct. 915, 142 L.Ed.2d 912 (1999) (defendant who pled guilty to violation of § 2252(a)(1) had traded some images, transmitting them by computer); *United States v. Coenen*, 135 F.3d 938, 945 (5th Cir.1998) (defendant who pled guilty to four counts of violating § 2252(a)(1) had both downloaded images from and uploaded images to Internet news groups); *United States v. Delmarle*, 99 F.3d 80, 82 (2d Cir.1996), *cert. denied*, 519 U.S. 1156, 117 S.Ct. 1097, 137 L.Ed.2d 230 (1997) (defendant who pled guilty to violating § 2252(a)(1) admitted sending images to others via electronic mail); *United States v. Thomas*, 74 F.3d 701, 705–06 (6th Cir.1996) (individual convicted under § 2252(a)(1) and other statutory provisions ran bulletin board operation); *United States v. Chapman*, 60 F.3d 894, 895 (1st Cir.1995) (defendant who pled guilty to violating § 2252(a)(1) had sent images to others through computer network); *United ed States v. Lamb*, 945 F.Supp. 441, 445–46 (N.D.N.Y.1996) (individual charged with violating § 2252(a)(1) had transmitted and received images). In the only case in which an individual who may have done nothing more than download images was charged with violating § 2252(a)(1), the defendant ultimately pled guilty only to a violation of § 2252(a)(4), which makes possession unlawful. *See United States v. McBroom*, 124 F.3d 533, 534 (3d Cir.1997). With that one possible exception, individuals whose sole criminal behavior has been to download pornographic images have been charged not under § 2252(a)(1) but under § 2252(a)(2) or § 2252(a)(4) (receipt or possession of child pornography). *See United States v. Muick*, 167 F.3d 1162, 1164 (7th Cir.1999) (defendant convicted of violation of § 2252(a)(2) and § 2252(a)(4) for downloading child pornography); *United ed States v. Simpson*, 152 F.3d 1241, 1244–45 (10th Cir.1998) (defendant convicted under § 2252(a)(2) had downloaded images); *United States v. Black*, 116 F.3d 198, 199–200 (7th Cir.), *cert. denied*, —— U.S. ——, 118 S.Ct. 341, 139 L.Ed.2d 264 (1997) (individual who distributed and received files charged under § 2252(a)(2) and other statutory provision); *United States v. Kimbrough*, 69 F.3d 723, 726–27 (5th Cir.1995) (individual who had downloaded images convicted under § 2252(a)(2)); *United States v. Petersen*, 25 F.Supp.2d 1021, 1022–23 (D.Neb.1998) (individual who pled guilty to violation of § 2252(a)(2) had downloaded child pornography). Thus, our interpretation of the differing provisions of § 2252(a) would appear to be in accord with the uniform practices followed by all other federal prosecutors.

For the above reasons, the district court's denial of Mohrbacher's motion for acquittal on counts one and two was in error, and we reverse as to those counts.

## III.

## ACCEPTANCE OF RESPONSIBILITY

▇▇▇ Because two of Mohrbacher's counts of conviction are not challenged and will remain in effect, we also consider whether the district court's denial of a downward adjustment for acceptance of responsibility constituted an abuse of discretion. Mohrbacher argues both that the district court improperly punished him for exercising his right to trial and that the court insufficiently explained the grounds upon which it relied. In support of his argument that he was entitled to an acceptance of responsibility adjustment, Mohrbacher cites his immediate and extensive cooperation with government investigative efforts, his willingness to enter a plea agreement, his failure to present any defense or contest any facts at trial, and his contention that he only refused the offered plea agreements because he could not admit to an untrue factual allegation.

▇▇▇ It is clear that a judge cannot rely upon the fact that a defendant refuses to plead guilty and insists on his right to trial as the basis for denying an acceptance of responsibility adjustment. *See United States v. Vance*, 62 F.3d 1152, 1157–58 (9th Cir.1995). Even a defendant who contests his factual guilt at trial may, under some circumstances, be entitled to such an adjustment. *See United States v. Ing*, 70 F.3d 553, 556 (9th Cir.1995) (entrapment defense is not inconsistent with downward adjustment for acceptance of responsibility); *United States v. McKinney*, 15 F.3d 849, 852–53 (9th Cir.1994) (defendant who had assisted authorities immediately upon his arrest, attempted to plead guilty, and declined to call any witnesses or raise an affirmative defense was entitled to acceptance of responsibility credit despite contesting factual guilt at trial through cross-examination of prosecution witnesses). In the instant case, a number of factors were present that would have supported an acceptance of responsibility adjustment. Mohrbacher admitted his acts immediately upon his arrest and cooperated with the government to discover others' criminal

activity; he initially pled guilty; and, at trial, he called no witnesses and presented no evidence, relying instead on minimal cross-examination of government witnesses. *See* U.S.S.G. § 3E1.1 Application Notes 1(a) (truthful admission of conduct that constitutes offense weighs in favor of acceptance of responsibility); 1(e) (assistance to authorities); 1(h) (timeliness of acceptance of responsibility).

▇▇▇ The district court, however, denied an acceptance of responsibility adjustment to Mohrbacher because he refused to admit to the intent element of the offense. While Mohrbacher did not testify at trial, at his sentencing hearing he made numerous statements denying that he had realized that he was downloading images of child pornography, statements that manifested a continuing denial of the requisite criminal intent. Such a refusal to admit one's guilt of the elements of an offense permits a district court to exercise its discretion to deny an acceptance of responsibility adjustment. *See United States v. Burrows*, 36 F.3d 875, 883 (9th Cir.1994) (upholding denial of acceptance of responsibility when defendant "maintained even after trial that he had a complete defense based on his purported lack of mens rea"); *United States v. Lindholm*, 24 F.3d 1078, 1087 (9th Cir.1994) (denial of acceptance of responsibility was proper when defendant continued to believe that he was innocent and to deny fraudulent intent, a central issue). Thus, the district court did not err in that respect.

▇▇▇ Next, as long as we can determine that the district court considered the defendant's objections and did not rest its decision on impermissible factors, no specific explanation of reasons is required for denying a defendant a downward adjustment for acceptance of responsibility. *See United States v. Marquardt*, 949 F.2d 283, 285–86 (9th Cir.1991). While the district judge did express some frustration at Mohrbacher's unwillingness to plead guilty, he specifically stated that he was not punishing Mohrbacher for his decision

to go to trial, but was instead basing his denial of the downward adjustment on the nature of the defense that Mohrbacher raised at trial and was continuing to assert at sentencing. Thus, the district court did not fail to explain its reasons adequately.

In sum, the district court did not abuse its discretion in denying Mohrbacher an adjustment for acceptance of responsibility.

## IV.

## CONCLUSION

We therefore REVERSE Mohrbacher's conviction on counts one and two but AFFIRM the district court's denial of an adjustment for acceptance of responsibility.

REVERSED in part, AFFIRMED in part, and REMANDED for further proceedings consistent with this opinion.

T.G. NELSON, Circuit Judge, specially concurring:

The Government charged Mohrbacher under 18 U.S.C. § 2252(a)(1), which governs transporting or shipping sexually explicit materials rather than § 2252(a)(2), relating to receiving or distributing those materials. The argument is now made, as it was in the district court, that downloading of the images constituted "transporting" the illicit materials.

While it is possible to make a strained argument to that effect, and it would be possible to write an equally strained opinion affirming on the basis of the aiding and abetting provisions of 18 U.S.C. § 2, I see no reason to encourage the Government to prosecute people under the wrong statute. This is particularly true when, as here, there is a perfectly clear statutory provision which applies to the defendant's conduct without the necessity of any interpretation. Therefore, I fully concur in our decision.