Theodore S. Kasler, J.
On April 12, 1968, the defendants attempted to enter Canada at the Peace Bridge in Port Erie, Ontario, but were refused admission because the defendant De Loach allegedly refused ito pay duty on some personal publications which he claimed he edited and published. Upon his refusal to pay the duty, Canadian Customs permitted him to turn around and recross the boundary line into the United States, whereupon he once again paid a toll and subsequently was stopped at a primary inspection station. .While at the primary inspection station, according to his own testimony, he informed the uniformed Customs Inspector that he was not permitted to enter Canada for the above-mentioned reason, but was nevertheless motioned to the customs parking area or compound for a secondary inspection.
As the defendants arrived at the customs compound, they were met by Customs Pont Investigators Charlesworth, Teresi and Schmand, who identified themselves and instructed the occupants to alight from the vehicle because it was going to be examined by them. During the examination, Customs Port Investigator Schmand observed and found a quantity of a brownish vegetable matter on the floor of the vehicle, mostly on the left, or driver’s, .side. Thereupon, the vegetable matter was taken by the Customs Port Investigators ito the Buffalo Police Department, where, after chemical analysis, it was found to be marijuana. Subsequently, the defendants were placed under arrest for possession of marijuana by Detective Joseph Giambra of the Buffalo Police Department Narcotics Squad.
*898 The record unmistakably indicates that the marijuana was discovered during a routine customs examination, conducted without any .prior information about the defendants, and without the assistance or presence of any other Federal, State or municipal police representatives.
This court is confronted with three problems as a result of this hearing: First, .was there, in fact, such a crossing of the border as to enable the Customs Service of the United States to conduct a search of the vehicle pursuant to sections 482 and 1582 of title 19 of the United States Code, providing for the search of vehicles and persons? Second, does there have to be some evidence on which to base a suspicion before a search can be conducted at the border? Third, does the Customs Service of the United States have any duty ito contact the Canadian Customs Service in order to verify any statements made to them concerning their refusal to admit the defendants into the Dominion of Canada?
There is no question that the defendants paid a toll upon their entry onto the Peace Bridge at Buffalo, New York, proceeded over the bridge, crossed the international boundary line, which is located midway in the bed of the Niagara River, and presented themselves at the primary inspection station of the Canadian Customs Service, located at Fort Erie, Ontario, Dominion of Canada. It was at this point that they were turned around, having been refused admission into the Dominion of Canada because of the defendant De Loach’s refusal to pay the duty on the above-mentioned publications. This necessitated a recrossing of the international boundary line, located as stated before, a payment of a toll, and a stopping at the primary 1 inspection station of the United States Customs Service at Buffalo, New York, within ithe confines of the inspection area of the United States Customs Service.
This court holds that there was an effective and completed exit from the territory of the United States, into the territorial jurisdiction of the Dominion of Canada. It is of no concern to this court .that the defendants were forced to return to the United .States because, by their own act of refusal to pay a duty in the sum of approximately $10 on the alleged publications, they would have completed their entry into the Dominion of Canada, and it is of no moment to this court that, under the facts and circumstances of this case, they could not have made any purchase of any articles which would be subject to duty by the United States. This court, on its own, questioned the attorney for the defendant De Loach whether the Canadian customs inspection stations could be observed from the area of the. *899 United States customs compound. The answer was in the negative, and this court takes judicial notice of that fact.
This court further holds that it was even unnecessary for the defendants to leave the United States in order to have their car subjected to a customs search, by virtue of the fact that upon their re-entry into the territorial jurisdiction of the United States, they first had to pass through the United States customs inspection station before they could complete their entry into the United States. This court holds that the defendants and their automobile were subject to a border search, and the court cites, for its authority, United States v. McGlone (594 F. 2d 75 [C. A. 4th, April 30, 1968]) where the facts were as follows: The uncontradicted facts disclose that while the Japanese merchant vessel was discharging cargo at a dock in Norfolk, Virginia, 600 transistor radios subject to customs duty were discovered missing from one of the shipments. Upon being notified of this fact by the Customs Inspector aboard the vessel, the Customs Port Inspector suspected, from experience, that some longshoremen might have carried them off. He then went to an adjacent paved quay, used as a parking lot by the longshoremen, where, on separate occasions, he stopped each of the two defendants leaving the lot in his car. A search of each car disclosed a small number of the stolen radios. Other than' a general suspicion that longshoremen were pilfering cargo, the Customs Investigator had no information implicating either defendant, nor did he have any warrant. The defendants specifically contended on appeal that the statute under which the customs official claimed to have acted was limited to smuggling situations, and was thus inapplicable to them. The Fourth Circuit disagreed and affirmed the conviction. The court pointed out that customs officials had the statutory power to “ stop, search, and examine * * * any vehicle * * * on which he * * * shall suspect there is merchandise which is subject to duty ” (U. S. Code, tit. 19, § 482); and that so long as a search conducted pursuant to that statute was “ reasonable ”, it did not offend the strictures of the Fourth Amendment. See, also, Lannom v. United States (381 F. 2d 858) in which case the appellant never crossed the border, the car was driven by an adult male who walked back to the Mexican border after parking the car off the highway, behind a laundromat, the point at which the appellant entered the vehicle and drove away. The contention was that it could not have been a “ border search ”, for the reason that the appellant had never driven the car into the United States. The court held otherwise.
*900 The second problem is the question of the necessity of any grounds to support a suspicion that goods subject to duty are being imported into the United States illegally.
On the facts of the instant case, the Customs Port Inspector at the primary inspection station was informed that these people had been turned back and prevented from entering Canada, on their own statement. This statement, in .and of itself, permitted the Customs Port Inspector to draw an inference that there might be other items of contraband, because Customs Inspectors are not limited to seizing only goods on which duty must be paid, but are also empowered to seize ¡goods which it is unlawful to possess. (See U. S. Code, tit. 19, ¡§ 482.)
“ In ¡conferring (upon Customs officers such broad authority, circumscribed only by Constitutional limitations of the Fourth Amendment, the Congress had in effect declared that a search which would be ‘unreasonable’ within the meaning of .the Fourth Amendment, if conducted by police officers in the ordinary case, would be a reasonable search if conducted by Customs officials in lawful pursuit of unlawful imports. Judicial recognition of this distinction has given rise to the term ‘ border search ’, in order to distinguish official searches which are reasonable because made solely in the enforcement of Customs laws from other official searches made in connection with general law enforcement.
‘ ‘ Validity for this distinction is found in the fact that the primordial purpose of a search by Customs officers is not to apprehend persons, but to seize contraband property unlawfully imported or brought into the United States. * * * Accordingly, it is well settled that a search by Customs officials of a vehicle, at a time and place of entering the jurisdiction of the United States, need not be based on probable cause; that ‘ unsupported ’ or ‘ mere ’ suspicion alone is .sufficient to justify such a search for .purposes of Customs law enforcement.” (See cases cited therein.) (Alexander v. United States, 362 F. 2d 379, 381-382, cert. den. 385 U. S. 977.) (See, also, People v. Serabie, 51 Misc 2d 914; People v. Furey, 42 Misc 2d 579.)
Refusal by the Canadian customs authorities to admit the defendants into Canada was a strong circumstance which warranted a search of the defendants’ automobile, based on an inference that matter which was perhaps unlawful to be admitted into the Dominion of Canada may have also been unlawful to possess in the United States.
As to the final contention of the defendants, that after the defendant De Loach explained to the United States Customs *901 Port Inspector why he was refused entry into the Dominion of Canada, the Inspector was obliged, on his own initiative, to contact the Canadian customs to verify the defendant’s statement to him, this court holds that this would place an impossible burden upon the Customs Service of the United States, would subvert the purpose of section 482 of title 19 of the United States Code, authorizing searches of vehicles and persons, and would read into the law what is not there, namely that all border searches would, in that case, have to be based upon probable cause, contrary to the case of Alexander v. United States (supra) which specifically states that probable cause is never necessary for a border search. Further, it is no fault of the United States Government that these defendants placed themselves in positions, by their own conscious, deliberate acts, as to arouse the suspicions of the customs official. A ruling of this nature, where United States customs would have to consult with Canadian customs as to every car that crossed, upon a mere statement by an occupant of said car that he was turned away for a seemingly innocuous reason, would prevent the customs officials from exercising their authority under section 482 of title 19 of the United States Code.
Therefore, the motion to suppress is denied in all respects, for the reasons cited above.