UNITED STATES of America,
Plaintiff–Appellee,

v.

Nzelo Chinedu OKAFOR, Defendant–
Appellant.

No. 01–50004.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 13, 2002.

Filed April 4, 2002.

Michael J. Raphael, Assistant United States Attorney, Los Angeles, California, for the plaintiff-appellee.

Cara DeVito, Berley & DeVito, West Hills, California, for the defendant-appellant.

Before KOZINSKI and GOULD, Circuit

Judges, and BREYER, District Judge.*

GOULD, Circuit Judge.

Nzelo Chinedu Okafor ("Okafor") claims the government violated his Fourth Amendment rights when customs inspectors searched his luggage at Los Angeles International Airport (LAX). The customs officials emptied his suitcase and x-rayed it. Thereafter, suspecting a hidden compartment, they inserted a needle-like probe into the suitcase and found cocaine. Okafor contends that this warrantless border search was not routine and that the fruits of the search should be suppressed. Okafor also contends that there were *Miranda* and *Apprendi* violations. We reject Okafor's contentions and affirm his conviction and sentence.

## FACTUAL BACKGROUND

Okafor was traveling from Brazil to Japan on a plane that made a scheduled stop to refuel at Los Angeles International Airport. Okafor exited the plane at LAX and went to the "in transit" lounge. Customs Inspector John Whitaker was screening passengers entering the lounge.

Okafor spoke with Whitaker. He showed his travel documents to Whitaker, who became suspicious of Okafor. Whitaker's suspicion was based on several reasons: (1) Okafor had purchased his ticket one day before departure; (2) Okafor, a U.S. citizen, told Whitaker he was on vacation in Brazil but was heading to Korea to study; (3) yet Okafor did not know the name of the school in Korea to which he was purportedly en route, and his passport did not have a visa authorizing him to attend school in Korea; and (4) the planned stay in Korea was scheduled for only a few days. Suspicions aroused, Whitaker escorted Okafor to a secondary inspection station.

After agents searched Okafor's carry-on bag, the agents requested Okafor's checked luggage, and it was removed from the plane. Senior Inspector Enrique Sanchez emptied one bag completely and noticed a smell of glue and mothballs. He sensed that the bottom of the bag was very thick and perceived that the empty bag was heavier than he thought it should have been. Sanchez suspected that Okafor's bag had a false bottom. Thereafter, an x-ray of the bag confirmed that it had a hidden compartment containing a substance. Armed with that knowledge, Sanchez proceeded to search further; he cut a small hole in Okafor's nylon bag and used a probe to extract white powder, which field-tested positive for cocaine.

Okafor was taken to a nearby room. An agent read Okafor his *Miranda* rights twice, explained the meaning of each paragraph, and gave Okafor a written version of the rights to read. Okafor was unsure whether to waive his rights. The agent told Okafor that the agent could make no guarantees, but that Okafor could help his cause by cooperating. The agent also said that Okafor faced ten to twenty years in prison, depending on the amount of drugs in the bag. The agent left while Okafor pondered whether to cooperate.

About forty-five minutes later, Okafor waived his *Miranda* rights and began to talk with the agents. Okafor said that he had received $10,000 to deliver the bag to a person in Japan. Okafor admitted that he knew the suitcase contained drugs.

Okafor was found guilty at trial, and was sentenced under 21 U.S.C. § 841(b)(1)(C),

* The Honorable Charles R. Breyer, United States District Judge for the Northern District of California, sitting by designation.

for an indeterminate amount of drugs, because the jury did not make a finding on quantity. The district court found that Okafor had a prior drug felony conviction, and sentenced Okafor to 240 months imprisonment.

## DISCUSSION

### I. Border Search

#### A. In General

■ Okafor claims the district court erred when it denied his motion to suppress the evidence seized in the search of his suitcase and the statements obtained as a fruit of that search. We review de novo a motion to suppress. *See United States v. Percy*, 250 F.3d 720, 725 (9th Cir.2001).

■ The search of Okafor's baggage as he came off an international flight is considered a border search, because it was conducted at the functional equivalent of a border checkpoint. *See Almeida–Sanchez v. United States*, 413 U.S. 266, 272–73, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973). When agents at an international airport search a traveler entering the United States from a foreign country, and the bags or containers entering with them, the agents are properly minding the borders of the United States. Careful review of transit through our international borders is essential to national security, health, and public welfare. Such searches may interdict those who would further crime, introduce matter harmful to the United States, or even threaten the security of its citizens. Thus it is well established that a border search can be conducted without a warrant and without any articulable level of suspicion, so long as the search is routine. *See United States v. Montoya de Hernandez*, 473 U.S. 531, 537–38, 105 S.Ct. 3304, 87 L.Ed.2d 381 (1985).

Here, the emptying of Okafor's bag and its visual inspection was clearly routine, *see, e.g., United States v. Vance*, 62 F.3d 1152, 1156 (9th Cir.1995), and Okafor does not even challenge that part of the search. However, Okafor claims that the x-ray of his bag and the subsequent incision and probe of his bag were not routine, and then contends that his bag was not suspicious enough to permit a non-routine search. We disagree with his premises, and for clarity of analysis address the x-ray and the probe of the bag separately.

#### B. X-ray

Although an involuntary x-ray of a person could in some cases be considered non-routine, *see Montoya de Hernandez*, 473 U.S. at 541 n. 4, 105 S.Ct. 3304, the same is not true about x-rays of objects. We held in *United States v. Ramos–Saenz*, 36 F.3d 59, 61 (9th Cir.1994), that a border search becomes non-routine "only when it reaches the degree of intrusiveness present in a strip search or body cavity search."

In *United States v. Molina–Tarazon*, 279 F.3d 709 (9th Cir.2002), we held that the search of an object could rise to that level of intrusiveness. The border search in *Molina–Tarazon* involved the dismantling and removal of a truck's fuel tank. We held that that search was non-routine because of the force used in conducting the search, the risk of harm the search posed, and the potential fear instilled in the truck's owner if left no choice but to drive a reassembled truck. *Id.* at 713–17. By contrast, an x-ray examination of luggage requires no force, poses no risk to the bag's owner or to the public, and does not harm the baggage. Nor should anyone be afraid to use a suitcase merely because it has been scanned by an x-ray. X-ray examination of luggage, bags, and other containers at a border is routine and requires

neither warrant nor individualized suspicion. *See United States v. Johnson,* 991 F.2d 1287, 1293 (7th Cir.1993); *United States v. Udofot,* 711 F.2d 831, 840 (8th Cir.1983).

■ We hold that examination of luggage and other containers by x-ray or other technological means may be done at the border with no required showing of particularized suspicion, at least so long as the means of examination are not personally intrusive, do not significantly harm the objects scrutinized, and do not unduly delay transit.

### C. Incision and Probe

Based on the unobjectionable x-ray of Okafor's suitcase, the agents suspected a hidden compartment and proceeded with a probe of the bag. The record in this case does not reveal the size of the incision made into Okafor's nylon bag or whether and to what extent the bag was permanently damaged. We are thus unable to determine whether the incision and probe was a routine border search.[1]

■ But even if a border search is not routine, our precedent makes clear that a non-routine border search will still be upheld if it was based on reasonable suspicion of criminal activity. *See Molina–Tarazon,* 279 F.3d at 717–18 (validating non-routine border search because reasonable suspicion was present). This rule requires rejection of Okafor's claims. By the time agents cut into Okafor's bag and found cocaine, Okafor had raised the agents' suspicions: his travel plans—flying from vacation in Brazil straight to school in Korea—seemed suspect; he did not know the name of the school he was attending; he purchased his ticket one day prior to travel; there was glue on his bag; his empty bag smelled of mothballs, which are often used to mask the scent of narcotics; his empty suitcase was heavier than experienced agents thought it otherwise should be; and, most importantly, an x-ray had explicitly revealed a hidden compartment in his luggage.

On these facts, the agents had reasonable, articulable suspicion to insert the probe into Okafor's baggage. Given the circumstances that came to their attention, the agents indeed had a duty to search further in order to protect the public welfare and national security.[2] Even if non-routine, the incision and probe search of the bag were understandable, reasonable, and wholly lawful. The district court did not err in admitting the fruits of the search into evidence.

### II. Other Claims

#### A. Incriminating Statements

■ Okafor asserts that he did not voluntarily waive his *Miranda* rights because he was coerced when the agent told Okafor that he would be subject to 10 to 20 years in prison and that it would be to his benefit to cooperate with authorities. We review de novo the voluntariness of a criminal suspect's statements to law enforcement

---

1. If the bag was not permanently and significantly affected, that would tend to make the search routine. If the bag has been significantly damaged, and perhaps even absent damage if it has been significantly altered or otherwise tampered with, that would tend to make the search non-routine. *Cf. Molina–Tarazon,* 279 F.3d at 717 (non-routine search where the fuel tank and accompanying connectors have been dismantled and then reattached).

2. As the issue was not presented on this appeal, we need not consider and have no occasion to decide whether the border agent had any duty to ask Okafor to open the secret compartment before testing its contents by other means.

officers. *See United States v. Doe*, 170 F.3d 1162, 1168 (9th Cir.1999).

■ Common sense may indicate that a suspect's recognition of the potential consequences of his or her crime may create incentives for cooperation. But there is nothing wrong with that. We have held that "recitation of the potential sentence a defendant might receive does not render a statement involuntary." *United States v. Bautista–Avila*, 6 F.3d 1360, 1365 (9th Cir. 1993) (internal quotation marks omitted). The ten to twenty year possible sentence was accurate, and its recitation does not amount to coercion. *See United States v. Orso*, 266 F.3d 1030, 1039 (9th Cir.2001) (en banc). Those who do a crime may have to pay in time; and we do not hesitate to say that law enforcement may bring this to the suspect's attention.

■ Okafor also claims he was coerced when the customs agent told him that the agent would let the government know if Okafor cooperated, and that cooperation could help Okafor avoid a lengthy prison sentence. We have previously held that similar statements do not render a subsequent confession involuntary. *See United States v. Leon Guerrero*, 847 F.2d 1363, 1366 (9th Cir.1988). Whatever inducement was offered by the agent to Okafor was not "sufficiently compelling to overbear the suspect's will in light of all attendant circumstances." *Id.* Inducements to cooperate are not improper and do not render a suspect's statement involuntary unless under the total circumstances it is plain that they have overborne the free will of the suspect. Here, under the total circumstances, including the length of time between discovery of the drugs and the statement, the waiver of *Miranda* rights was valid and the ensuing statement to authorities was voluntary.

### B. *Apprendi* Claim

Okafor claims *Apprendi* error on the grounds that the jury did not make a finding whether the illegal substance found in Okafor's luggage was cocaine or cocaine base. Okafor claims this error caused him to be sentenced at an offense level of thirty-eight instead of a level of twenty-eight.

■ Okafor's actual sentence was 240 months (twenty years). The maximum sentence under 21 U.S.C. § 841(b)(1)(C) for an indeterminate amount of drugs is twenty years—or thirty years if the defendant has a previous drug felony conviction. Under *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Whether a jury found that the substance was cocaine or instead was cocaine base, the applicable statutory maximum would have remained at twenty years (or thirty with a prior drug felony conviction). The type of drug in Okafor's bag affected only the sentencing guideline offense level and not the statutory maximum. Therefore, *Apprendi* was not implicated, and the district court did not err. *See United States v. Buckland*, 277 F.3d 1173, 1185 (9th Cir.2002) ("*Apprendi* does not alter the authority of the judge to sentence *within* the statutory range provided by Congress" (emphasis in original)).

### C. Prior Conviction

■ Okafor claims that the prosecution did not prove beyond a reasonable doubt the fact that he sustained a prior drug felony conviction. We review de novo claims of insufficient evidence. *See United States v. Antonakeas*, 255 F.3d 714, 723 (9th Cir.2001). Evidence of the prior

conviction is sufficient if, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the fact of the prior conviction beyond a reasonable doubt. *See, e.g., Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

The evidence showing the prior conviction included: (1) a certified copy of the conviction of Nzelo C. Okafor; (2) the birth date on the conviction document matching the one on defendant's passport and state identification card; (3) the social security number associated with the prior conviction matching the one on defendant's social security card; and (4) an agent's testimony that Okafor admitted to a prior narcotics arrest and that he had a probation officer.

■ Okafor presented no evidence at all to contradict this. Instead, Okafor claims that fingerprints or photographs are needed to link a defendant to a prior conviction. Although there may be cases where fingerprints are necessary to verify a prior conviction, this is not one of them. *Cf. United States v. Rivera–Sanchez,* 247 F.3d 905, 907 (9th Cir.2001) (en banc) (describing situation in which two prior convictions were removed from defendant's PSR when booking photos from prior convictions were not of defendant, and fingerprints could not verify prior conviction); *United States v. Green,* 175 F.3d 822, 835 (10th Cir.1999) (holding prior conviction not proved beyond reasonable doubt without photographs or fingerprints when name, birth year, and address of defendant not the same as those associated with prior conviction). Here, the name, birth date, and social security number of the defendant matched those associated with a prior conviction. And Okafor did not offer any

evidence showing that he was not the same person who sustained the prior conviction. Photographs or fingerprints may have aided the court in its determination, but they were not needed here in light of the other evidence. The prior conviction was proved beyond a reasonable doubt.[3]

### CONCLUSION

We uphold the border search and the admission of any evidence derived from it. We uphold the admission of Okafor's incriminating statements. We affirm Okafor's conviction and sentence.

**AFFIRMED.**

---

**3.** Even were it assumed that the prior conviction was not proved beyond a reasonable doubt, it is difficult to see how this would have prejudiced Okafor. He was sentenced to only twenty years, which was within the statutory maximum absent the prior conviction.