**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 12-50015 |
| Plaintiff - Appellee, | D.C. No. 2:09-cr-01008-TJH-1 |
| v. | |
| CHRISTOPHER OKECHUKWU IRUKE, AKA Okechuksu Joseph, AKA Pastor Chris, | MEMORANDUM[*] |
| Defendant - Appellant. | |

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 12-50110 |
| Plaintiff - Appellee, | D.C. No. 2:09-cr-01008-TJH-2 |
| v. | |
| CONNIE EHICHANYA IKPOH, | |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the Central District of California
Terry J. Hatter, Senior District Judge, Presiding

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Submitted October 9, 2013[**]
Pasadena, California

Before: PREGERSON, WARDLAW, and TALLMAN, Circuit Judges.

Following a jury trial, Christopher Iruke and Connie Ikpoh were each convicted of conspiracy to commit health care fraud in violation of 18 U.S.C. § 1349 and of multiple counts of health care fraud in violation of 18 U.S.C. §§ 1347 and 2(b). Iruke appeals his convictions and sentence, arguing that the district court erred in (1) denying his motion to suppress evidence found in the church where he served as pastor; (2) excluding evidence showing that the Anti-Kickback Act, 42 U.S.C. § 1320a-7b(b)(2), does not totally prohibit the payment of referral fees; and (3) adding a 20-level sentence enhancement instead of an 18-level enhancement under United States Sentencing Guideline § 2B1.1(b)(1) for the amount of loss to the victim. Ikpoh appeals her health care fraud convictions based on insufficiency of the evidence. We have jurisdiction under 28 U.S.C. § 1291, and we affirm as to both appellants.

First, Iruke contends that the district court should have granted his motion to suppress evidence discovered pursuant to a search warrant because the warrant affidavit contained illegally obtained information discovered during a prior,

---

[**] The panel unanimously granted Connie Ikpoh's motion to submit appeal No. 12-50110 on the briefs without oral argument.

2

cursory protective sweep of Arms of Grace Church incident to the arrest of Aura Marroquin. *See United States v. Bishop*, 264 F.3d 919, 924–25 (9th Cir. 2001). We review a district court's denial of a motion to suppress evidence de novo, but we review its factual findings for clear error. *United States v. Pope*, 686 F.3d 1078, 1080 (9th Cir. 2012).

Iruke argues that the district court clearly erred in finding that Marroquin was arrested inside the church. We give special deference to the district court's credibility determinations, *United States v. Craighead*, 539 F.3d 1073, 1082 (9th Cir. 2008), and we conclude that the district court's finding was supported by the testimony of two agents whose testimony it expressly credited.

Iruke next asserts that the search was illegal because the agents exceeded the scope of a protective search incident to arrest as articulated in *Maryland v. Buie*, 494 U.S. 325 (1990). *Buie* permits officers lawfully inside a structure pursuant to an arrest warrant to "look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched." *Id.* at 334. Given the cavernous nature of the church's first floor, we conclude that the district court did not err in finding that "Room A, Room B, the hallway adjoining Rooms A and D, and Room D were immediately adjoining the place of arrest." *See United States v. Lemus*, 582 F.3d 958, 962–64 (9th Cir. 2009). The record evidence also

3

supports the district court's finding that the search was sufficiently cursory and was motivated by understandable concern for officer safety.

Second, Iruke contends that the district court violated his right to present a defense when it excluded as irrelevant evidence showing that the Anti-Kickback Act does not totally prohibit the payment of referral fees for Medicare patients.[1] We review the district court's exclusion of evidence for abuse of discretion. *See United States v. Redlightning*, 624 F.3d 1090, 1110 (9th Cir. 2010). Evidence is irrelevant if it has no "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable." *United States v. Boulware*, 384 F.3d 794, 805 (9th Cir. 2004) (citing Fed. R. Evid. 401). The district court properly concluded that the evidence Iruke sought to admit was irrelevant because the indictment did not charge any violations of the Anti-Kickback Act and Iruke did not demonstrate that any limited safe-harbor provision applied to his actions. *See United States v. Ross*, 626 F.2d 77, 81 (9th Cir. 1980) (holding that defense testimony was properly excluded as irrelevant). Moreover, any error was harmless because a witness testified that in some cases referral fees were permissible under the Anti-Kickback Act.

---

[1] Iruke waived any challenge to the district court's jury instructions because he did not explicitly raise the issue in his opening brief. *United States v. Romm*, 455 F.3d 990, 997 (9th Cir. 2006).

4

Third, Iruke asserts that the district court erred in applying United States Sentencing Guideline § 2B1.1 to increase his offense level based on the amount of loss caused by his fraud. We review the district court's interpretation of the Sentencing Guidelines de novo, *United States v. McCormac*, 309 F.3d 623, 627 (9th Cir. 2002), and its estimate of loss for clear error, *United States v. W. Coast Aluminum Heat Treating Co.*, 265 F.3d 986, 990 (9th Cir. 2001). The commentary on § 2B1.1 instructs that "loss" for the purposes of the enhancement is "the greater of actual loss or intended loss." U.S. Sentencing Guideline § 2B1.1, cmt. n.3(A). Actual loss is the "reasonably foreseeable pecuniary harm that resulted from the offense" whereas intended loss is defined as "the pecuniary harm that was intended to result from the offense . . . and . . . includes intended pecuniary harm that would have been impossible or unlikely to occur (*e.g.*, as in a government sting operation, or an insurance fraud in which the claim exceeded the insured value)." *Id.* at § 2B1.1, cmt. n.3(A)(i)–(ii). The district court properly interpreted the Guideline and did not clearly err when it concluded that the intended loss exceeded $7 million. This calculation was the product of the district court's reasonable judgment that the intended loss was somewhere over $7 million and not equivalent to either the approximately $6.7 million paid by Medicare or the approximately $14.2 million billed to Medicare.

Finally, we address Ikpoh's argument that there was insufficient evidence of her knowledge and intent to commit the substantive health care fraud crimes charged in counts 6-9 of the indictment involving Horizon, one of the durable medical equipment companies. "There is sufficient evidence to support a conviction if, 'viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Sullivan*, 522 F.3d 967, 974 (9th Cir. 2008) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). And the prosecution is permitted to prove Ikpoh's mens rea with evidence that she actually knew of the illegality of her conduct or that she "knowingly provided substantial assistance to another's violation." *United States v. Dearing*, 504 F.3d 897, 901 (9th Cir. 2007). Viewing the evidence in the light most favorable to the prosecution, there was sufficient circumstantial evidence to convict Ikpoh under either theory. *See id.* Horizon and its related bank accounts were opened solely in Ikpoh's name and Ikpoh was registered as the company's President. Her name also appears on a statement certifying that Horizon would comply with Medicare rules and regulations.

There was also evidence that Ikpoh participated in efforts to remove incriminating evidence related to the fraud scheme after grand jury subpoenas were

6

served on the targets of the investigation. *See id.* (concealing unlawful activity constitutes circumstantial evidence of fraudulent intent). And Horizon engaged in "highly unusual practice[s]," including not collecting the required Medicare co-pays and not conducting home assessments. *See United States v. Laykin*, 886 F.2d 1534, 1540 (9th Cir. 1989) (noting that "[t]he jury could probably have inferred intent to defraud from" unusual practices alone). This was enough evidence for a reasonable jury to convict her.

**AFFIRMED.**